UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

ARIZONA BEVERAGES USA, LLC,

              Petitioner,

      - against -

BALL CORPORATION, and REXAM
BEVERAGE CAN COMPANY,

              Respondents.

**ORDER**

22 Civ. 10083 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      AriZona Beverages USA, LLC brings this petition seeking to confirm an arbitration award that it obtained against Ball Corporation and Rexam Beverage Can Company (collectively with Ball, "Respondents"), pursuant to the Federal Arbitration Act ("FAA"). (Pet. (Dkt. No. 1)) Respondents filed a "Notice of Cross-Petition" seeking to confirm the arbitration award and to enter judgment.[1] (Notice of Cross-Petition (Dkt. No. 13))

      For the reasons stated below, the arbitration award will be confirmed.

## BACKGROUND

      AriZona is "an industry leader in the ready-to-drink tea market and the non-carbonated beverage market." (Pet. (Dkt. No. 1) ¶ 2) "Ball is one of the world's leading suppliers of aluminum cans for the beverage industry," and "Rexam was a subsidiary of Rexam PLC, a British-based multinational consumer packaging company . . . , and also a leading supplier or aluminum cans for the beverage industry." (Id. ¶ 3)

───────────────────

[1] While Ball filed a "Notice of Cross-Petition" (see Notice of Cross-Petition (Dkt. No. 13)), it filed no cross-petition. Ball nonetheless states that its "Cross-Petition also serves as Respondents' response to Petitioner's Petition to Confirm Arbitration Award and to Enter Judgment." (Id.; see also Resp. Opp. (Dkt. No. 14) at 4 n.1)

...

In May 2015, AriZona and Rexam entered into the Amended and Restated Can Supply Agreement (the "2015 Agreement"), in which "Rexam agreed to supply Petitioner with '100%' of its 'current and future requirements' of aluminum cans in North America." (Id. ¶ 4) The 2015 Agreement contains the following arbitration provision:

> In the event there is a dispute over any of the terms of this [Amended and] Restated [Can Supply] Agreement or the fulfillment of any of the terms by either Party, or a disagreement over the resolution of any claim made with respect to product or services received from R[exam], then the Parties shall meet within 30 days of the receipt of written notice of the dispute for the purposes of reaching an amicable resolution. If no amicable resolution is reached, the Parties agree that the dispute shall be submitted to final and binding arbitration to be conducted in New York, N.Y. on a date and at a time convenient to all Parties by and pursuant to the rules and regulations of the American Arbitration Association ("AAA").

(Wolfson Decl., Ex. B. (Dkt. No. 2-2) at 2)

In June 2016, Ball acquired Rexam PLC, and Rexam became a wholly-owned subsidiary of Ball. (Pet. (Dkt. No. 1) ¶ 5) At that time, Ball assumed and became liable for Rexam's obligations under the 2015 Agreement. In connection with the acquisition, the Federal Trade Commission required Ball to enter into a Contract Manufacturing Agreement with third-party Ardagh Group, S.A., another manufacturer of aluminum beverage cans, to ensure that Petitioner continued to receive the cans it required under the 2015 Agreement. (Id. ¶ 6)

In 2019, AriZona and Ball entered into the Adoption Agreement, which would take effect on December 1, 2021, when the 2015 Agreement expired. The Adoption Agreement incorporates the 2015 Agreement's arbitration provision. (Id. ¶ 7)

According to Petitioner, "[a] dispute arose between the parties due to Ball's failure to supply Petitioner with 100% of the aluminum beverage cans required by Petitioner during the period commencing on January 1, 2021 and continuing thereafter, in breach of the 2015 Agreement, and from December 1, 2021, through January 31, 2022, under the Adoption Agreement." (Id. ¶ 8) On November 8, 2021, Petitioner filed a Demand for Arbitration and

Statement of Claim with the AAA, and, on December 23, 2021, it filed an Amended Statement of Claim. (Id.) The arbitration took place over seven days between March 14, 2022 and June 2, 2022 in New York, New York. "Hundreds of exhibits were admitted into evidence," and AriZona called five fact witnesses and one expert witness, while Ball called two fact witnesses and three expert witnesses. (Wolfson Decl., Ex. A ("Final Award") (Dkt. No. 2-1) at 10)

The Final Award provides that:

1. AriZona has established liability on its Second Cause of Action, breach of the 2015 Agreement, in that AriZona has shown that Ball breached the 2015 Agreement.

2. AriZona has failed to establish liability on any of its other causes of action, which are hereby dismissed, and has failed to establish a basis for either injunctive relief, specific performance, punitive damages, or sanctions, and such relief is denied.

3. Based on Ball's breach of the 2015 Agreement, AriZona is entitled to damages in the form of lost profits in the amount of $14,571,271.03 (which is inclusive of pre-Award interest). The Respondents are jointly and severally liable for this amount.

4. Following issuance of this Award, interest will accrue at a per diem rate of[ ]$3,592.92 until such time as the award is paid in full or judgment is entered, whichever occurs first. The Respondents are jointly and severally liable for this amount.

5. The administrative fees of the AAA totaling $25,062.18 shall be borne equally, the compensation of the emergency arbitrator totaling $4,095.00 shall be borne equally, the compensation and expenses of the party appointed arbitrators totaling $174,468.20 shall be borne as incurred, and the cost of the third arbitrator and other related costs totaling $255,862.50 shall be borne equally. Therefore, Respondents, jointly and severally, shall reimburse to Claimant the amount of $12,531.09, representing that portion of said costs previously incurred and paid by Claimant.

> 6. All other claims and requests for relief, including in the form of claims, affirmative defenses or otherwise, made by any Party, are hereby dismissed.

(Final Award (Dkt. No. 2-1) at 48-49)

The instant Petition to Confirm Arbitration Award and to Enter Judgment was filed on November 28, 2022. (Pet. (Dkt. No. 1)) On December 13, 2022, Respondents filed a "Notice of Cross-Petition." (Notice of Cross-Petition (Dkt. No. 13))

## DISCUSSION

### I. APPLICABLE LAW

When reviewing an arbitration award under the FAA, a court "'can confirm and/or vacate the award, either in whole or in part.'" Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012) (quoting D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006)). "[A]rbitral awards and the arbitral process" deserve "strong deference." Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 138 (2d Cir. 2007). Accordingly, "confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" D.H. Blair & Co., Inc., 462 F.3d at 110 (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)). "Only a 'barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." Id. (quoting Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, 952 F.2d 794, 797 (2d Cir. 1992)).

### II. ANALYSIS

Petitioner argues that "[t]he [a]rbitration [a]ward should be confirmed in its entirety." (Ptr. Br. (Dkt. No. 3) at 4) Respondents "agree[] that the Court should confirm the November 21, 2022 arbitration award," but "disagree[] . . . with [Petitioner's] characterization of, and only partial recitation of, the key relief included in the [f]inal [a]ward." (Resp. Opp.

(Dkt. No. 14) at 4) "Most critically, [Respondents] dispute[] [Petitioner]'s contention that the [f]inal [a]ward is 'against' Respondents." (Id.)

Before issuing the Final Award, the arbitrators conducted a hearing over seven days, considered "[h]undreds of exhibits," and heard from seven fact witnesses and four expert witnesses. (Final Award (Dkt. No. 2-1) at 10) The arbitrators found that "AriZona has established that Ball breached the 2015 Agreement, but has not established that Ball breached the Adoption Agreement," and that "AriZona has established its entitlement to damages in the form of lost profits in the amount of $13,121,765.34, exclusive of the pre-award and prejudgment interest, both of which [the arbitrators] further award." (Id. at 5)

The Final Award issued by the arbitrators is within the powers granted to them under the 2015 Agreement's arbitration provision, which states that,

> [i]n the event there is a dispute over any of the terms of this [Amended and] Restated [Can Supply] Agreement or the fulfillment of any of the terms by either Party, or a disagreement over the resolution of any claim made with respect to product or services received from R[exam], then the Parties shall meet within 30 days of the receipt of written notice of the dispute for the purposes of reaching an amicable resolution. If no amicable resolution is reached, the Parties agree that the dispute shall be submitted to final and binding arbitration to be conducted in New York, N.Y. on a date and at a time convenient to all Parties by and pursuant to the rules and regulations of the American Arbitration Association ("AAA").

(Wolfson Decl., Ex. B. (Dkt. No. 2-2) at 2)

"'[C]ourts are not authorized to review [an] arbitrator's decision on the merits [even in the face of] allegations[] . . . []that the decision rests on factual errors or misinterprets the parties' agreement.'" N.Y.C. Dist. Council of Carpenters Pension Fund v. Star Intercom & Constr., Inc., No. 11. Civ. 3015 (RJH), 2011 WL 5103349, at *4 (S.D.N.Y. Oct. 27, 2011) (second and third alterations in original) (quoting Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001)). Here, of course, Respondents do not even argue that the arbitrators' decision is premised on factual errors or a misinterpretation of the parties' agreement.

5

(See Resp. Opp. (Dkt. No. 14) (quoting Ptr. Br. (Dkt. No. 3) at 10) ("Ball agrees with AriZona that '[t]here is no basis for withholding confirmation of the Arbitration Award.'"))

A court "may vacate an arbitration award in four specific situations":

> "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

In re Arbitration Between Gen. Sec. Nat'l Ins. Co. and AequiCap Program Adm'rs, 785 F. Supp. 2d 411, 417 (S.D.N.Y. 2011) (quoting 9 U.S.C. § 10(a)). Here, there is no evidence that the arbitrators' decision was unlawful, arbitrary, or in excess of the arbitrators' powers. Accordingly, the Petition to confirm the Final Award will be granted.

## IV.    POST-JUDGMENT INTEREST

Petitioner's request for post-judgment interest at the statutory rate (Pet. (Dkt. No. 1) ¶ 26) is also granted. "28 U.S.C. § 1961(a) mandates post-judgment interest for civil money judgments recovered in federal district court." Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. S&S Kings Corp., No. 19 Civ. 01052 (RA), 2019 WL 4412705, at *4 (S.D.N.Y. Sept. 16, 2019) (confirming arbitration award and granting pre- and post-judgment interest) (citing Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 100 (2d Cir. 2004)). "[P]ost-judgment interest 'shall be calculated from the date of the entry of the judgment.'" Id. (quoting 28 U.S.C. § 1961(a)).

## **CONCLUSION**

For the reasons stated above, the petition to confirm the arbitration award (Dkt. No. 1) is granted. The Clerk of Court is directed to enter judgment, confirming the arbitration award in favor of Petitioner for: $14,571,271.03 in lost profits damages, inclusive of pre-Award interest; pre-judgment interest at the per diem rate of $3,592.92 from November 21, 2022 until the date judgment is entered; $12,531.09 in reimbursement costs; and post-judgment interest at the rate provided in 28 U.S.C. § 1961(a), calculated from the date of the entry of judgment until the award is paid on full. The Clerk of Court is directed to close this case.

Dated: New York, New York
August 18, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge